UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

QUENTIN D. BETTY,

        Plaintiff,

v.

KENNETH MCKEE et al.,

        Defendants.
_____/

Case No. 2:18-cv-218

Honorable Janet T. Neff

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and state law. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### **Discussion**

    I.    <u>Factual allegations</u>

        Plaintiff Quentin D. Betty is presently incarcerated with the Michigan Department of Corrections (MDOC) at Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following MDOC employees: Deputy Director Kenneth McKee,

1

Warden Duncan MacLaren, Food Service Director M. Callentine, and Grievance Coordinator C. Anderson. Defendants MacLaren, Callentine, and Anderson worked at KCF during the events at issue in the complaint.

Plaintiff alleges that in December 2017, he was assigned a job as a pots and pans dishwasher in the kitchen at KCF. After starting his assignment, Plaintiff became aware of conditions that made him concerned. He saw what he describes as "Food Law violations, health hazards and cross contamination conditions[.]" (Compl., ECF No. 1, PageID.8.) Plaintiff does not describe these conditions in much detail. He notes that there were no "mandator[y] hand washing sinks on the main serving line, or in [the] Religious/Meal Kitchen[.]" (*Id.*, PageID.16.) In addition, he asserts that there were "holes in the wall on the meal serving line[.]" (*Id.*) As to "cross contamination," Plaintiff is apparently referring to the possibility that food intended for prisoners with specific religious dietary requirements would come into contact with food or substances that violate those requirements. Plaintiff allegedly informed Defendant Callentine of the foregoing issues. She did not respond.

Because Plaintiff's job assignment involved the use of a strong soap and sanitizer product for cleaning, he asked Callentine for protective eyewear. She laughed and told him that he did not need eyewear and that the prison never provided them. In January 2018, Plaintiff wrote complaints to Defendants MacLaren and McKee about the objectionable conditions in the KCF kitchen. They did not respond.

On February 14, 2018, some of the soap and sanitizer splashed into Plaintiff's left eye while he was washing dishes. His eye immediately started burning. There was no eyewash station in the kitchen, so he rushed to the prisoner bathroom to flush his eye with water. That did not help, so he went to the healthcare unit where there was an eyewash station. The nurses in the

healthcare unit helped Plaintiff flush his eyes with water and subsequently prescribed medicated eye drops to treat a chemical burn on his eye.

After Plaintiff returned to his unit, he filed a grievance on Defendants MacLaren, McKee, and Callentine. Grievance Coordinator Anderson rejected the grievance for reasons not identified in MDOC policy. Warden MacLaren upheld rejection of the grievance at Step II of the grievance appeal process.

Plaintiff subsequently filed a grievance against Defendant Anderson. That grievance was rejected and Defendant MacLaren upheld the rejection during the grievance appeal process.

In February/March 2018, an inspector came to KCF to investigate the conditions in the kitchen. The inspector spoke with Plaintiff and Defendant Callentine and noted that there was no eyewash station in the kitchen area. When asked about this, Defendant Callentine responded that the sink had been removed because prisoners could not use it. The inspector instructed Callentine to install an eyewash station.

Another inspection in May 2018 revealed "countless other health hazard[s] and food safety violations[.]" (*Id.*, PageID.13.) Defendant Callentine was later terminated from her position.

Based on these allegations, Plaintiff claims that Defendants MacLaren, McKee, and Callentine failed to protect him from a substantial risk of serious harm. In addition, Plaintiff contends that Defendant Anderson frustrated his efforts to seek redress for his grievances.

As relief, Plaintiff seeks an injunction as well as compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff contends that Defendants failed to protect him from harm. In his prison job, he had to work with a cleaning agent that could cause injury if it came into contact with his eyes. Defendant Callentine refused to provide him with eyewear to protect him from such injury, and did not ensure that there was an eyewash station in the kitchen area should an incident occur. In addition, Plaintiff alleges that the conditions in the kitchen were generally unsanitary, which left him in fear of eating "soiled" or "contaminated" foods. (Compl., PageID.16.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

5

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997). The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839. Deliberate indifference cannot be inferred from merely negligent,

6

or even a grossly negligent, response to a substantial risk of serious harm. *See Whitley*, 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . safety").

1. Failure to provide eyewear and an eyewash station

Plaintiff's claim about Defendants' failure to provide protective eyewear and an eyewash station near the kitchen concerns workplace safety. The Eighth Circuit has held that the intentional placement of a prisoner in dangerous surroundings can violate the Eighth Amendment, though mere negligence is not sufficient. *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991); *see also Lee v. Sikes*, 870 F. Supp. 1096, 1099 (S.D. Ga. 1994) (applying Eighth Amendment to workplace safety); *Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (indicating that it is questionable whether the Eighth Amendment applies to work-related prison injuries). To show deliberate indifference in the context of workplace safety, prisoners must show that prison officials have "knowingly compel[led them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (quoting *Talley v. Stephens*, 247 F. Supp. 683, 687 (E.D. Ark. 1965)); *accord Berry v. Burnell*, 39 F.3d 1056, 1057 (9th Cir. 1994).

The types of factual circumstances which are insufficient to show deliberate indifference to conditions in the prison workplace are illustrated by the Eighth Circuit's decision in *Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993), and by the District of South Carolina's decision in *Arnold*. In *Warren*, an inmate was injured when a board "kicked back" from a table saw that he was operating at the furniture factory at the state penitentiary. 995 F.2d at 130. The inmate alleged that the defendants were deliberately indifferent in failing to equip the saw with an anti-kickback feature despite knowledge of prior injuries. The district court granted defendants'

motion for summary judgment, and the Eighth Circuit affirmed. *Id.* at 130-31. Defendants introduced evidence that there had been twenty-nine table saw injuries in the five years preceding the inmate's injury, as well as efforts to correct the working condition of the saws when the injuries occurred; the plaintiff introduced evidence that there had been twenty-one prior injuries. *Id.* at 131. Even assuming that Defendants were aware of allegedly similar prior accidents, the Eighth Circuit found that there was no genuine issue of deliberate indifference to a serious issue of workplace safety. *Id.*

In *Arnold*, an inmate working in the prison kitchen was burned by a twenty-five-gallon pot that tipped downward. 843 F. Supp. at 111. The inmate alleged that the kitchen supervisor had been informed that the pot was faulty, and the supervisor had replied that they did not have time to fix it. *Id.* at 113. The district court held that there was no evidence that defendants possessed the requisite culpability by failing to repair the pot, and, at best, the inmate had offered evidence which showed only negligence. *Id.*; *see also Stephens v. Johnson*, 83 F.3d 198, 201 (8th Cir. 1996) ("Simply failing to provide inmates who move furniture with steel-toed boots, protective eyewear, and hard hats, for example, does not establish a constitutional violation any more than failing to install a safety device on a saw despite knowledge of prior injuries.").

On the other hand, other courts have indicated that "when a prison official knowingly compels a prisoner to perform work that involves an imminent threat of serious physical harm posing a danger to the prisoner's life or health, deliberate indifference has been found to exist." *Smalls v. Berrios*, No. 3:06cv96/LAC/MD, 2007 WL 1827465, at *8 (N.D. Fla. June 25, 2007) (citing *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987) (holding that inmate stated Eighth Amendment claim against correctional officer, where inmate alleged that officer ordered him to continue working on a defective ladder even though the officer knew the ladder was unsafe);

8

*Morgan v. Morgensen*, 465 F.3d 1041, 1047 (9th Cir. 2006) (holding that prison official was not entitled to qualified immunity on prisoner's Eighth Amendment claim that he ordered the prisoner to continue operating defective printing press which the official had been warned and had reason to believe was dangerously defective); *Ambrose v. Young*, 474 F.3d 1070, 1078 (8th Cir. 2007) (concluding that prison official's instruction to stomp out fire burning near a dangling live power line constituted deliberate indifference to a known and substantial risk); *Hall v. Bennett*, 379 F.3d 462, 464-65 (7th Cir. 2004) (holding that genuine issues of material fact existed as to whether supervisors knew that inmate could suffer a severe electrical shock as a consequence of working on a live wire of elevated voltage without protective gloves; summary judgment evidence established that supervisors assigned the inmate the task of working on the circuit, but denied him protective gloves)).

As in *Warren* and *Arnold*, Plaintiff's allegations suggest only that Defendants were negligent. They allegedly failed to provide safety goggles to Plaintiff, which could have prevented the minor injury he suffered. However, as the court indicated in *Stephens*, a mere failure to provide safety equipment does not rise to the level of a constitutional violation.

Moreover, unlike the circumstances at issue in *Gill*, *Morgan*, *Ambrose*, and *Hall*, Plaintiff's allegations do not permit a reasonable inference that he faced a substantial risk of serious harm, let alone that Defendants were deliberately indifferent to such a risk. Using cleaning agents without protective eyewear is not so inherently dangerous that it presents a substantial risk of harm. Plaintiff does not allege that other incidents occurred before his injury.

Moreover, as Plaintiff's case demonstrates, even when an incident occurs, it does not pose a significant threat to the prisoner's health or safety. Plaintiff does not allege that he suffered a long-term injury; he merely alleges that he suffered a burn that was treatable by a brief

9

course of medication. In addition, there are no facts from which to infer that the lack of an eyewash station near the kitchen posed a risk of harm. Accordingly, Plaintiff's allegations concerning Defendants' failure to provide protective eyewear and an eyewash station do not state an Eighth Amendment claim.

2. Unsanitary conditions in the kitchen

Plaintiff also alleges that the kitchen was unsanitary, and that the food and workspaces were not adequately controlled to ensure that food intended for religious diets was not contaminated by substances that were inappropriate for those diets. Plaintiff's allegations about these conditions are too vague and conclusory to state a claim. They are not supported by specific facts that would permit a reasonable inference that Defendants were deliberately indifferent to Plaintiff's health or safety.

Moreover, to the extent Plaintiff was concerned about complying with a religious diet, he provides no allegations supporting a need for such a diet. Thus, there is no factual support for a claim that Defendants were deliberately indifferent to his religious rights. To the extent Plaintiff is concerned about the needs of other prisoners who adhere to a religious diet, he cannot raise claims on their behalf. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).

In short, for all the foregoing reasons, Plaintiff fails to state an Eighth Amendment claim.

B. Supervisory Liability

Even if Plaintiff stated an Eighth Amendment claim, he would not state such a claim against Defendants MacLaren and McKee. Plaintiff alleges that they did not respond to his grievances and complaints regarding the conditions in the KCF kitchen. Plaintiff initially complained to Food Service Director Callentine, but when she did not respond, he complained to Warden MacLaren and MDOC Deputy Director McKee. Warden MacLaren also upheld the rejection of several of Plaintiff's grievances. These allegations are not sufficient to state a claim against MacLaren and McKee.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff does not allege that Defendants MacLaren and McKee engaged in any unconstitutional conduct. They were not directly responsible for Plaintiff's safety, and they were not obligated to respond favorably to Plaintiff's complaints and grievances about the conditions in

11

the KCF kitchen. Thus, Defendants' failure to address the concerns raised in Plaintiff's grievances does not give rise to liability under § 1983. *See Shehee*, 199 F.3d at 300.

### C. Grievance Process

Plaintiff claims that Defendant Anderson prevented him from exercising his right to seek redress of grievances by rejecting a prison grievance. In addition, Defendant MacLaren allegedly reviewed a grievance involving MacLaren, in violation of MDOC policy. Plaintiff's constitutional rights were not implicated by this conduct.

Contrary to Plaintiff's assertion, Defendants did not interfere with Plaintiff's constitutional right to petition the government for grievances, which includes "'access . . . to the courts for the purpose of presenting [his] complaints.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (quoting *Johnson v. Avery*, 393 U.S. 483, 485 (1969)). That right "typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress for Defendants' actions is underscored by the fact that he was able to file this lawsuit. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to

the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). Accordingly, Defendants' review and rejection of Plaintiff's prison grievances could not have interfered with Plaintiff's constitutional right to petition the government for redress.

Moreover, courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' actions did not deprive him of due process.

Furthermore, the fact that Defendants did not comply with prison policy in their handling of Plaintiff's grievances is not enough to state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v.*

*City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law or prison policy. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

D. Retaliation

Plaintiff uses language in the complaint implying that Defendant Anderson retaliated against Plaintiff. Plaintiff asserts that he was exercising a "a Protected Right" when he filed his grievance, and that Defendant Anderson violated the First Amendment when rejecting it. (Compl., PageID.15.) The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff fails to allege an adverse action. Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g., Ross*

*v. Westchester Cty. Jail*, No. 10 Civ. 3937(DL C), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), aff'd, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim). Consequently, Plaintiff fails to state a retaliation claim.

For all the foregoing reasons, Plaintiff fails to state a claim under § 1983.

III.    State Law

Plaintiff also purports to assert a tort claim under state law. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claim, the Court declines to exercise such jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the action will be dismissed. Plaintiff's claims under federal law will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the Court declines to exercise jurisdiction over Plaintiff's state-law claim. Consequently, Plaintiff's state-law claim will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: January 9, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge